CENTRAL TRUST Co. and another *v.* WABASH, ST. L. & P. RY. Co. and others.   (NOONAN, Intervenor.)[1]

*(Circuit Court, E. D. Missouri.   March 24, 1886.)*

RAILROADS—CONTRIBUTORY NEGLIGENCE—RIDING ON DEFECTIVE CAR.

The foreman of the crew of a switch-engine complained to the yard-master that one of the foot-boards of his engine was in a dangerous condition, but it was not repaired. Three days after making the complaint, and while riding on the defective foot-board, he was thrown off in consequence of the defect, and injured. He might have ridden on the caboose platform, which was safe. *Held,* that he had not been guilty of such contributory negligence as to prevent a recovery.

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

In Equity.   Exceptions to master's report.

Petition for damages for injuries received by the intervenor in consequence, as alleged, of the negligence of the defendants.   At the time of the accident in question the intervenor was the foreman of the night crew of a switch-engine used in the Moberly yards.   On the morning of May 29, 1885, he got on the engine for the double purpose of informing the foreman of the day crew about the position of cars in the yard and of riding home.   He took his position on the foot-board at the forward end of the car.   This foot-board was suspended by four wrought-iron hangers or straps from a heavy piece of timber or cross-beam secured by bolts to the frame of the engine.   This cross-beam had become loose, and when subjected to pressure would turn so as to swing the foot-board under its outer edge.   When the pressure was removed it would spring back.   It had been in this defective condition for several weeks, and several attempts had been made to fix it, but they had been unsuccessful. On the twenty-sixth of May the intervenor had told the yard-master that the step "was not fit for a man to work on,—was not safe," and had told him about it two or three times before.   Nothing was done, however.   This foot-board was adjacent to the platform of the caboose, and when the intervenor took his position on it as above stated he might, by a little exertion, have gotten on said platform, which was unoccupied.   He did not do so, however, and the speed of the engine being suddenly increased, and the pressure on the cross-beam relieved, the foot-board suddenly sprung up, jerked the intervenor off, and threw him under the wheels of the caboose, which ran over one of his legs.   The master reports that although there was great negligence in leaving the foot-board in its dangerous condition, yet the accident was directly contributed to by the intervenor in getting on the foot-board, which he knew to be unsafe, instead of climbing on the caboose platform.

*Dyer, Lee & Ellis*, for intervenor.

*Wills H. Blodgett* and *H. S. Priest*, for receivers.

TREAT, J., (*orally.*)   In the light of the evidence, the construction by the master of the technical rules governing such causes is too narrow.   The intervenor, an employe of the railway company, complained of the defective machinery, which it was the duty of the railway company to repair.   In the hurry of business, in the discharge of his duties, and possibly for his personal convenience, he sought to use the machinery, which ought to have been perfect, to reach his home. The injury occurred by his using the defective step, concerning which he had theretofore complained.   It seems to the court that the doctrine of contributory negligence under the facts proved would be pushed to an extreme if the railway company could, through *its* neglect of duty, after due notice, be relieved from its obligations to its employes because an employe who having repeatedly *given notice to*

the railway company, should, in the hurry of business, meet an accident resulting from such defective contrivance. It may be that, having complained of the defects, it would have been prudent on his part to observe whether the defects had been remedied; yet, in the conduct of business requiring rapid action with regard to incoming and outgoing trains, it becomes important that the employes should be prompt and efficient for the general conduct of the commerce of the country involved in rapid and safe transit. Railroad corporations ought not to be relieved from their obligations on which the safety of life and property depend, and on which the safety of employes also depend, by any strained or narrow rules. An employer and employe, each for the benefit of the other, and of the general public, should be held respectively to the obligations involved in the nature of the employment. Hence under the evidence presented, the exceptions by the intervenor must be sustained, and the case referred back to the master to determine the damages sustained by the intervenor.